## FINN *v.* THE STATE.

Under the R. S. 1843, malice was necessary to constitute murder either in the first or second degree, and the distinction consisted in its being accompanied in the first degree with, and in the second degree without, deliberation and premeditation.

The words "malice aforethought" in the description of murder do not necessarily imply that the act was committed with deliberation and premeditation.

Indictment for murder, charging the prisoner with having committed the act "feloniously, wilfully, and of his malice aforethought." *Held*, that, under the R. S. 1843, the indictment only contained a charge of murder in the second degree.

When the life or liberty of the accused is in danger, the pleadings are to be construed in his favor and against the pleader.

Upon the trial of a prisoner on an indictment for murder in the second degree, it is immaterial what the opinion of a juror is in regard to the death penalty.

*Friday,
December 1.*

APPEAL from the *Decatur* Circuit Court.

HOVEY, J.—*John Finn* was indicted for the murder of *James McCarty*, in the *Dearborn* Circuit Court. There are two counts in the indictment, in the usual common-

law form for murder, charging *Finn* with having commit-
ted the act "feloniously, wilfully and of his malice afore-
thought."

A change of venue was taken to the *Decatur* Circuit
Court, where, at the *April* term, 1852, a trial was had and
a verdict returned as follows: "We, the jury, find the de-
fendant guilty of murder in the second degree, as he stands
charged in the indictment, and that he be imprisoned in
the state's prison and kept at hard labor during life; and
we find him not guilty of murder in the first degree, as he
stands charged in said indictment." Motions for a new
trial and in arrest of judgment were made and overruled,
and judgment pronounced upon the verdict.

On impanneling the jury, the Court permitted the pros-
ecuting attorney to interrogate *Abner Hobbs*, one of the
jurors, as to whether he would in any case inflict the pun-
ishment of death for murder, and upon his answering in
the negative, the Court, for that cause, permitted the pros-
ecuting attorney to challenge him, over the objection of the
prisoner.

The Court, counsel and jury all seem to have treated
the indictment as charging the prisoner with murder in
the first degree, and if such is its character, the form of the
verdict, and the rejection of *Hobbs* as a juror, would be in
conformity with the ruling of this Court. *Gross* v. *The
State*, 2 Ind. R. 329.

What offence does the indictment charge under the R.
S. of 1843? By that revision, felonious homicide is di-
vided into three kinds: murder in the first degree, murder
in the second degree, and manslaughter.

Murder in the first degree, is defined as follows: "If any
person of sound memory and discretion, shall purposely
and of deliberate and premeditated malice, or in the perpe-
tration or attempt to perpetrate any rape, arson, robbery,
or burglary, or by administering poison or causing the
same to be done, kill any reasonable creature in being, and
under the peace of the state, such person shall be deemed
guilty of murder in the first degree, and upon due convic-
viction thereof, shall suffer death."

Nov. Term,
1854.

FINN
v.
THE STATE.

Murder in the second degree, is thus defined. "If any person shall purposely and maliciously, but without deliberation and premeditation, kill any human being, every such person shall be deemed guilty of murder in the second degree, and on conviction thereof, shall be imprisoned in the state's prison and kept at hard labor during life." Chap. 53, R. S. 1843, ss. 2 and 5, pp. 960, 961.

Malice, under these sections, is necessary to constitute murder in either degree, and the distinction consists in its being accompanied in the first degree with, and in the second degree without, deliberation and premeditation.

This being the case, it becomes necessary to inquire whether "malice aforethought" necessarily embraces premeditation and deliberation; or whether there can be malice aforethought without premeditation and deliberation.

There can be no doubt that such malice would include those cases where the design to kill was mature and perfect, and formed before the meeting of the parties; and in *Beauchamp* v. *The State*, 6 Blackf. 299, it is said that "to constitute malice aforethought, it was only necessary there should be a formed design to kill, and that such design might be conceived the moment the fatal stroke was given, as well as a long time before; that malice aforethought means the intention to kill."

In the celebrated case of Dr. *Webster*, 5 Cush. 306, *Shaw*, C. J., in his charge to the jury, says, "It is not the less malice aforethought, within the meaning of the law, because the act is done suddenly, after the intention to commit the homicide is formed; it is sufficient that the malicious intention precedes and accompanies the act of homicide. It is manifest, therefore, that the words malice aforethought in the description of murder *do not imply deliberation*, or the lapse of considerable time between the malicious intent to take life, and the actual execution of the intent, but rather denote purpose and design, in contradistinction to accident and mischance."

The killing is of malice aforethought whenever it is voluntary, and is not justified, excused or extenuated by circumstances. See Foster 256.—4 Black. Comm. 198.—1

Hale 424.—*The King* v. *Harvey*, 2 B. and C. 268. Malice aforethought, as thus defined, is broad enough to cover the whole ground of murder, in the first and second degree, under our statute—broad enough to cover all cases, from the premeditated, deliberate act in cold blood, to the momentary blow given without premeditation, provocation or excuse. As murder in the first degree, under our statute, requires deliberate and premeditated malice, and as the phrase "malice aforethought" does not necessarily require deliberation and premeditation, we are of the opinion that the indictment only contains a charge of murder in the second degree; for there is no rule better settled, than that in cases where the life or liberty of the accused is in danger, the pleadings are to be construed in his favor and against the pleader.

As the prisoner could not, under the indictment, be legally convicted of murder in the first degree, it was immaterial what opinions *Hobbs* may have entertained in regard to the death penalty, as no such punishment could have been inflicted; and his rejection by the Court for that cause was, therefore, erroneous.

*Per Curiam.*—The judgment is reversed. Cause remanded, &c.

*J. R. Coverdill* and *C. S. Parrish*, for the appellant.

*R. A. Riley*, *N. B. Taylor*, and *J. Coburn*, for the state.